[No. 9748.   Department Two.   January 3, 1912.]

W. F. ADAMS *et al.*, *Appellants,*. v. JOHN L. CANUTT *et al.*,
                        *Respondents.*[1]

SPECIFIC PERFORMANCE—COMPLAINT—SUFFICIENCY. A general alle-
gation in a complaint for specific performance that the plaintiffs
have performed all of the agreements on their part to be performed,
is sufficient, as against a general demurrer, to show that specific pro-
visions of the contract had been complied with.

EVIDENCE—JUDICIAL NOTICE. The courts take judicial notice of
the rules and practice of the Interior Department.

TRUSTS—AGREEMENTS—CONSTRUCTION — DUTY OF TRUSTEE — SPE-
CIFIC PERFORMANCE. Under the rule of liberal construction of trust
agreements ·to effectuate the intent of the parties, where an assign-
ment of a state land contract to a bank as trustee authorized the
state to receive from the bank the performance of the contract, the
trustee to receive the deed from the state when the parties shall
have made full payment, and to execute deeds of different portions of
the lands to the respective parties interested in the trust, it is im-
material whether the parties make payment for the lands direct to
the state or to the bank; and upon payments to the bank as trustee,
it is the duty of the trustee to perform the state contract, receive
the state deeds and fully execute the trust; and the bank cannot
defeat specific performance on the theory that it acted only as agent
in receiving the money.   .

TRUSTS—AGREEMENT—AMBIGUITY—EVIDENCE—PAROL EVIDENCE TO
EXPLAIN WRITING. In such a case, the trust being admitted, parol
evidence is admissible to make certain any of the uncertain, incom-
plete, or ambiguous terms of the assignment to the trustee; and the
oral agreement of the trustee to make payments to the state, upon
payment to it, does not contradict the terms of the trust.

SPECIFIC PERFORMANCE—DEFENSES—PLEADING. In an action for
specific performance, in which the complaint alleged performance by
the plaintiff of all the conditions of the contract upon its part to be
performed, nonperformance of conditions is matter of defense, and
cannot be urged on general demurrer to the complaint.   .

Appeal from a judgment of the superior court for Whit-
man county, Neill, J., entered April 26, 1911, dismissing an

[1]Reported in 119 Pac. 865.

action for specific performance, upon sustaining a demurrer to the amended complaint. Reversed.

*Pattison, Stotler & Pattison,* for appellants.

*J. T. Brown* and *Chas. R. Hill,* for respondents.

CHADWICK, J.—In 1905, defendants Canutt entered into a contract with the state of Washington for the purchase of certain school lands. On January 30, 1908, Canutt and wife entered into a written contract with Frank H. Endsley, whereby they agreed to sell Endsley a fractional part of the lands. Endsley paid them the sum of $1,004.94 in money, and agreed to meet all balances due and to become due to the state upon the principal contract. There were other covenants with reference to the occupation and use of the land, not now necessary to be considered. In order to carry out the agreements of the parties and to effect a final division of the land, a written contract was executed, the material parts of which follow:

"The purchase price of said property is the sum of $7,404.94, which the party of the second part agrees to pay the parties of the first part as follows: the sum of $1,004.94 cash upon the signing and delivery of this agreement, the receipt of which is hereby acknowledged and the balance of said purchase price to be paid as follows: . . . It is further agreed that the parties of the first part will pay all taxes or assessment levied or assessed against said premises for the year 1906 and previous years and the party of the second part will pay all taxes levied or assessed against said premises for the year 1907 and subsequent years. . . . It is further understood and agreed by and between the parties hereto as part of the consideration of this agreement that the party of the second part will farm said lands in good and farmer-like manner during each and every year of this agreement until the full purchase price and interest has been fully paid, and that the title to an undivided one-third of all crops raised upon said premises during each and every year of this agreement is and shall remain in the parties of the first part until the payment of the interest and principal due on said

contract with the state of Washington then due shall have
been paid.   It being the intention of the parties hereto that
at least one-third of said crops clear of all expense shall be
applied during each year of this agreement towards the pay-
ment of the sum due the state of Washington upon said con-
tract.   If the party of the second part fully, faithfully and
promptly pays said sums of principal and interest due on
said contract with the state of Washington, according to the
terms of said contract or any extension that the state may
grant, subject to the conditions hereinbefore expressed, and
shall pay said taxes as herein agreed, and shall fully and
faithfully comply with all of the terms of this agreement to
be by him performed, then the trustee, hereinafter named is
authorized and directed to procure a deed to said lands and
premises in the name of said trustee and execute a deed to the
lands herein agreed to be conveyed to the party of the second
part and to execute a deed to the remainder of said lands to
the parties of the first part.   If the party of the second part
should fail or neglect to fully and faithfully comply with all
the conditions herein expressed to be by him performed
promptly at the times herein stated, time being the essence of
this agreement, then the parties of the first part are released
and discharged from all obligations in law or in equity to
convey said premises, or any part thereof, and all payments
made shall be kept and retained by the parties of the first part
as liquidated damages and as rent for the use of said premises.
It is understood and agreed that the parties of the first part
will make, execute and deliver to the Farmers State Bank
of Colfax, Washington, as trustee, an assignment of said
contract with the state of Washington, to be by said bank
held as trustee to carry out the terms of this agreement, and
if the party of the second part should fail or neglect to fully
comply with the conditions of this agreement to be by him
performed as herein set forth, said bank is authorized and di-
rected to reassign and redeliver said contract to the parties
of the first part."

The following assignment was attached to the principal
contract:

"John L. Canutt and Nettie E. Canutt, his wife, the within
named purchaser, for and in consideration of the sum of one
($1.00) dollar, to them in hand paid by Farmers State Bank,

a corporation, trustee, of Colfax, county of Whitman and
state of Washington, hereby sells, assigns and transfers all
their rights, title and interest in and to the within contract
and the lands therein described unto the said Farmers State
Bank its assigns forever, and we do hereby authorize the
state of Washington to receive from said bank the perform-
ance of all covenants and agreements in said contract
specified to be performed by the party of the second part,
and upon such performance to execute to it a patent as it
would have been executed to me had this assignment not been
made.    And Farmers State Bank said assignee, hereby cov-
enants and agrees to keep and perform all the covenants and
conditions specified in said contract to be performed by the
party of the second part.    Given under our hands and seals
this 30th day of January, A. D. 1908.

> "John L. Canutt,
> "Nettie E. Canutt,
> "Farmers State Bank of Colfax, Wash.
> "P. B. Stravens, Pres.
> "P. O. Address, Colfax, Wash."

Thereafter Endsley, for a valuable consideration, sold all
his right and interest in the land to plaintiffs Adams, who,
on the 27th day of October, 1909, tendered to the Farmers
State Bank the full sum due on the contract, and demanded
that it procure a deed to the lands in controversy and convey
to them the part they were entitled to.    This the bank re-
fused to do, because the Canutts had on the 20th day of
October, served notice upon it that they had declared the
contract forfeited and no longer binding upon them.    This
action was brought to compel specific performance.    It was
the view of the trial court that the complaint did not state a
cause of action, because it was not made to appear that
Endsley or these plaintiffs had paid the sums due on the
contract to the state of Washington; that a payment to the
bank would not be a payment to the state, and that, if pay-
ments had been made to the bank, the bank would become an
agent merely of appellants to transmit the money.    The court
further held that the contract was subject to forfeiture; or,
to use the words of the trial judge, the complaint could not

be made to state a cause of action.   Accordingly a demurrer was sustained, whereupon plaintiffs filed an amended complaint, wherein it is alleged:

"6th.   That on the said 30th day of January, 1908, said plaintiffs, John L. Canutt and Nettie E. Canutt, his wife, and defendant Frank H. Endsley, delivered to the Farmers State Bank of Colfax, Washington, a corporation, the original said agreement and said bank accepted the same and covenants and agreed to keep and perform all of the covenants and conditions specified in said contract to be performed by the said John L. Canutt, and said bank agreed upon the receipt of the payments due the said state of Washington, as set forth in said contract to forward the same to the state of Washington, and procure a deed for said lands in accordance with the terms and conditions of the aforesaid agreement."

It was also alleged, as it had been in the original complaint:

"13th.   That plaintiffs having complied with all of the agreements to be by them performed are entitled to have said defendant Farmers State Bank perform said agreements to be by it performed."

Upon demurrer, the trial judge was still of the opinion that, considering the contracts and assignment, which were made a part of the pleadings, there was no obligation on the part of the bank to receive and transmit the fund, and that he could not decree that it should do so, it nowhere being alleged that appellants or their assignor had paid or tendered payment to the state.   He further held that there was nothing for the trustee to do until payment had been made to the state by the plaintiffs or their assignors, and that paragraph 6 of the amended complaint above quoted could not be considered in the light of the writings, which, in his judgment, negatived the bare allegation that the bank agreed to receive and transmit the money.   The court was of the further opinion that the complaint lacked in other particulars, that it did not allege that certain taxes and sums agreed to

be paid the Canutts had been paid, and that the land had been farmed in a proper manner. We think that paragraph 13 of the complaint sufficiently covers this point, as against a demurrer, and will proceed to a discussion of the main issues.

It occurs to us that the vice of the trial court's reasoning lies in this, that he is inclined to treat the trustee as a principal; whereas this controversy must be decided upon the equities existing between Canutt and Endsley and his assignees. When so considered, we think the amended complaint, as well as the original complaint, states a cause of action. The bank has answered that it has no interest except as defined by the assignment, and that it is willing to abide any order the court may make, and perform any duty that may be put upon it. The assignment to the bank was made with reference to the agreement between the Canutts and Endsley, and that agreement was made with reference to the law as it existed at the time. It is a fundamental rule that writings in which trusts are declared are to be construed liberally in order to effect the object of the parties concerned; that the intention of the parties affords the only sure test for construing the deed a contract creating an express trust, and that technical constructions are not favored. *Porter v. Bank of Rutland*, 19 Vt. 410; 28 Am. & Eng. Ency. Law (2d ed.), 991; 1 Perry, Trusts (4th ed), § 95.

The only parties who have an interest in this trust are the parties to the contract of sale, and the first inquiry should be, what was their purpose, rather than what was the means adopted to accomplish that purpose. It was the intention of the Canutts to sell all of a certain section of land except a certain part lying south of a county road. An assignment of any part thereof less than the whole, unless described by government subdivisions, could not be entered at the state land office. (We take judicial notice of the rules and practice of that department.) To secure both parties,

the title, in so far as it was controlled by the contractee, was put in the Farmers State Bank, under the terms following:

"We do hereby authorize the state of Washington to receive from said bank the performance of all covenants and agreements in said contract specified to be performed by the party of the second part."

As we read this contract, we are unable to agree with the trial judge in his ruling that "there is nothing for the trustee to do until all the payments have been made and all other conditions have been complied with." This would be equivalent to holding that the bank was to do nothing but execute the deeds. To so hold ignores its agreement to keep and perform all the covenants of Canutt's contract with the state, to receive a deed upon full payment, and Canutt's command to the state to receive from the bank the performance of all his covenants, the most material of which is the promise to pay the purchase price. But if an agreement to receive and pay the money over to the state is not expressed, it is certainly to be implied as a part of the bank's obligation. To hold otherwise would be to make the manner and form of payment to the state, not merely material, but controlling; whereas, considering the design of the parties, it was and must be now so held of no consequence to the Canutts whether the payment to the state was made by the bank, Endsley, or these plaintiffs, so long as his obligation was discharged.

Furthermore, there being no question as to the creation of a trust, the assignment, which in this case is the trust instrument, is to be construed in the light of the object sought to be obtained; and to that end if it be held that the assignment is uncertain, incomplete, or ambiguous, parol evidence may be received to show the situation and circumstances surrounding its execution. Or, to restate the proposition, while an express trust in lands (assuming that the bank is a trustee of lands) cannot be proved by parol, the trust being established, parol evidence will be received to make the instru-

ment certain if it be uncertain, or to show its terms, to the end that the true purpose of the parties in interest be not defeated.  Beach, Trusts, 753; *Reid v. Reid*, 12 Rich. Eq. (S. C.) 213; *Hinckley v. Hinckley*, 79 Me. 320, 9 Atl. 897; *Nesbitt v. Stevens*, 161 Ind. 519, 69 N. E. 256.  Under this rule, paragraph 6 of the amended complaint makes the complaint state a cause of action, although it be held that the original did not.

It was urged upon the argument of this cause, and is suggested in the brief, that appellants and their assignor have failed to meet other covenants and conditions of their contract.  If so, it may be shown in defense of this action. We are not holding that there may not be a defense, but merely that the complaint before us states a cause of action and entitles the appellants to be heard in a court of equity.

Reversed, and remanded with instructions to overrule the demurrer.

DUNBAR, C. J., ELLIS, CROW, and MORRIS, JJ., concur.