Ross *v.* Thompson et al.

[No. 18,743. Filed December 6, 1957.]

*William S. Isham, Fraser & Isham, James A. Gardner, Thomas R. McConnell, Nolin & McConnell,* all of Fowler, for appellant.

*Kenneth Call,* of Gary, *Jesse W. McAtee* and *Riley, Reed, Murphy & McAtee,* of East Chicago, for appellee

Floyd Meyers, Administrator de bonis non of the estate of Delos Thompson, deceased.

*Timothy P. Galvin* and *Galvin, Galvin & Leeney,* of Hammond, for appellee Alfred Thompson.

*Cope J. Hanley,* of Rensselaer, for appellees Mary Ellen Fischer, Executrix of the Last Will and Testament of Lois Thompson Kirk, deceased, Mary Ellen Fischer, Hugh Tom Kirk, Katherine Teyber, Carolyn Nesbit.

*Robert B. Wright,* of Rensselaer, for appellee State Bank of Rensselaer, Guardian of Emily Thompson.

*John E. Hopkins* and *Hopkins & Hopkins,* of Rensselaer, for appellee Hugh A. Kirk.

COOPER, J.—This is an appeal from the Jasper Circuit Court wherein the appellant brought an action against the appellees to impress a trust upon certain real estate consisting of three hundred and fourteen (314) acres of farm land in Jasper County, certain bank stock consisting of one hundred thirty-five and two-thirds (135 2/3) shares in the State Bank of Rensselaer, and a bank deposit in the amount of Twenty-one thousand seven hundred seventy-five dollars and fifty-four cents ($21,775.54), and also seeking an accounting in the said alleged trust.

The complaint of the appellant proceeds on the theory of an express trust as distinguished from a constructive or resulting trust.

The term "express trust" signifies a trust created by the direct and positive acts of the parties as evidenced by some deed, will, or other instrument, ▮ wherein the language employed either expressly or by plain implication evinces an intention to create a trust. *Holsapple* v. *Shrontz* (1917), 65 Ind. App. 390, 117 N. E. 547.

The record shows that after many unsuccessful mo-

tions and pleadings, each of the appellees filed an answer to the appellant's complaint.

The record further shows that several paragraphs of answers filed by defendants included answers denying the material allegations of the complaint; asserting the defenses of the statute of limitations; of laches; of estoppel; a defense of express termination of a trust by agreement and further asserting that the wrong form of an action had been commenced in that a claim should have been filed against the estate of Delos Thompson who was alleged to have been a trustee under a written trust.

The appellant filed replies in denial of the affirmative matters of the several paragraphs of answer.

The record also shows that the matter was submitted to the court without the intervention of a jury and at the conclusion of the plaintiff's evidence, the defendants, each and severally, filed motions for the court to enter a finding and judgment for the said defendants for the reason ". . . that the evidence introduced by the plaintiff is not sufficient to sustain the allegations of the plaintiff's complaint . . ." and thereafter the court made the following ruling and final judgment:

"Come again the parties as before, and the argument on the motions of the defendants for the Court to find for said defendants, is now resumed, and the Court having heard the evidence and being duly advised in the premises now sustains said motions and finds for the defendants and each of them, and the Court now enters judgment upon said finding.

"It is therefore considered, adjudged and decreed by the Court that the plaintiff in this cause take nothing by her complaint, and that the defendants and each of them recover of and from the plaintiff their costs and charges laid out and expended in this cause, and taxed at $. . . . . . . . . .

"All of which is ordered and decreed this 10 day of March, 1955."

Thereafter the appellant filed his motion for a new trial on each of the following grounds:

"1. The decision of the court is contrary to law.

"2. Errors of law occurring at the trial most specifically designated as follows:

"(a) The Court erred in sustaining motion for Finding for defendant Floyd Meyers, Administrator *de bonis non* of the estate of Delos Thompson, deceased.

"(b) The Court erred in sustaining the motion of the defendants Alfred Thompson; State Bank of Rensselaer, Guardian of Emily Thompson; Mary Ellen Fischer, Executrix of the Last Will and Testament of Lois Thompson Kirk, deceased; Hugh A. Kirk; Mary Ellen Fischer; Hugh Tom Kirk; Katherine Teyber; and Caro-*line* Nesbitt for finding for said defendants at conclusion of Plaintiff's evidence.

"(c) The Court erred in excluding each of the following exhibits offered by plaintiff, to-wit:

"Plaintiff's Exhibit No. 6—Statement of Assets and Liabilities, January 1, 1901.

"Plaintiff's Exhibit No. 7—Statement, January 1, 1903.

"Plaintiff's Exhibit No. 8—Invoice, January 1, 1898.

"Plaintiff's Exhibit No. 9—Statement, January 1, 1905.

"Plaintiff's Exhibit No. 10—Statement of Assets & Liabilities.

"Plaintiff's Exhibit No. 11—Statement of Account, January 1, 1904.

"Plaintiff's Exhibit No. 12—Invoice, January 1, 1897.

"Plaintiff's Exhibit No. 13—Farm Invoice, January 1, 1914.

"Plaintiff's Exhibit No. 14—Statement, December 31, 1933.

"Plaintiff's Exhibit No. 15—Farm Invoice, January 1, 1915.

"Plaintiff's Exhibit No. 16—Farm Invoice, January 1, 1917.

"Plaintiff's Exhibit No. 17—Farm Invoice, January 1, 1918.

"Plaintiff's Exhibit No. 18—Farm Invoice, January 1, 1921.

"Plaintiff's Exhibit No. 25—Schedule of all property for Inheritance Tax appraisal in estate of Delos Thompson, deceased.

"Plaintiff's Exhibit No. 26—Order determining value of Estate and amount of tax in Estate of Delos Thompson, deceased.

"Plaintiff's Exhibit No. 136—Accounting statement as to status of trust February 2, 1951.

"Plaintiff's Exhibit No. 137—Statement as of January 31, 1950.

"Plaintiff's Exhibit No. 138—Letter and Statement to E. M. LaRue from Paul W. Lewis.

"WHEREFORE, the Plaintiff prays the Court for a new trial of said cause."

The sole assignment of error before us is the overruling of the appellant's motion for a new trial.

Specification C of the second ground of the appellant's motion for a new trial (which we will dispose of first) is, "The court erred in excluding each of the following exhibits offered by the plaintiff, to-wit": and thereafter mentions eighteen different exhibits. This claimed error (and there was error in refusing to admit certain exhibits offered) is not properly before us for the reason that the motion for a new trial does not set out the exhibits or their substance. A motion for a new trial must set out the exhibits or the substance thereof in order that the court can determine whether or not harmful error exists without searching the record. *Gray* v. *Hawke Motor Sales, Inc.* (1953), 124 Ind. App. 74, 77, 112 N. E. 2d 459, and authorities cited; *Greek* v. *Seward* (1943), 222 Ind. 211, 213, 51 N. E. 2d 3, and authorities cited; Flanagan, Wiltrout & Hamilton, Indiana Trial and

Appellate Practice, §1812, Comment 8 (1956 Supplement) and §1977, and authorities cited.

The other ground in the appellant's motion for a new trial is based upon the assignment that the decision of the court is contrary to law and that the court erred in sustaining a motion for a finding for and on behalf of the respective defendants. Thus, we are called upon to consider whether or not there is any evidence to sustain the allegations of the appellant's complaint. In view of the court's announced finding, in sustaining said motion, it seemingly becomes prudent to consider the effect of said motion and the principles governing its treatment.

Our court, in the case of *Garrett* v. *Estate of Hoctel, etc.* (1957), 128 Ind. App. 23, 142 N. E. 2d 449, 453, said:

"Primarily, it may be said that it is tested by the same rules of law as is a request for a peremptory instruction to the jury. Abernathy v. McCoy (1926), 91 Ind. App. 574, 600, Points 16-18, 154 N. E. 682. In Hill v. Rogers (1951), 121 Ind. App. 708, 712 (Transfer denied), 99 N. E. 2d 270, 272, it is said that in ruling upon a motion for judgment at the conclusion of plaintiff's case, the court:

" 'may consider only the evidence and the reasonable inferences which

" 'may be drawn therefrom most favorable to the plaintiff. If there is any evidence from which it may be reasonably inferred the plaintiff was entitled to relief, it is error to sustain such motion.'

"Further, we may state, in determining upon such motion that the court must not weigh the evidence and it must exclude all conflicting evidence that is favorable to the defendant. National Union Fire Insurance Company v. Minas Furniture Company (1927), 86 Ind. App. 358, 362, 158 N. E. 248."

The law is clear that upon an appeal from the judgment entered in a trial for the movant at the close of

the adverse party's evidence, this court will construe the evidence in the manner most favorable to the adverse party. *Folsom* v. *Callen* (1956), 126 Ind. App. 201, 131 N. E. 2d 328, 330.

With the aforesaid basic principles of law in mind, and, in reviewing the evidence in the record before us without reciting all of the same, we believe the evidence introduced by the appellant was sufficient to establish the following pertinent facts: (1) that an express trust in writing as of 1896 was created without limit as to time and that Delos Thompson accepted the trust and engaged upon its performance; (2) that pursuant to the powers granted him as such trustee, he from time to time converted the original assets, both real and personal, and acquired properties and assets in appropriate manner for the use and benefit of the trust and the *cestui que* trustents. The record discloses no final disposition of the trust by the trustee.

By a stipulation of the parties as shown by the record herein, it is apparent that Florence T. Sears (one of the beneficiaries of the trust) died intestate, leaving as her heirs-at-law her mother, Mary E. Thompson, her sister, Ora T. Ross, and her brother, Delos Thompson, and that the said Mary E. Thompson (also a beneficiary of the trust) died intestate, leaving as her only heirs-at-law Ora T. Ross, the appellant herein, and Delos Thompson, the deceased trustee, who were brother and sister. The record from exhibits introduced reflects that upon the respective deaths of the said Florence T. Sears and Mary E. Thompson, the said trustee increased the interest of the surviving owners of the trust property by enlarging such interest as each would inherit as survivors under the laws of descent of the State of Indiana.

Family settlements, such as in the case at bar, are especially favored by the law and are upheld by courts

to encourage and maintain family confidence and to avoid frauds and the abuse of such confidence. *Hensler* v. *Alberding* (1927), 86 Ind. App. 372, 158 N. E. 243; *Rickes* v. *Rickes* (1923), 81 Ind. App. 533, 141 N. E. 486.

Whenever any property in its original state has been impressed with a trust, no subsequent change of its original form or condition can divest it of its trust character so long as it is capable of being identified, and the beneficiary thereof may pursue and reclaim it, regardless of the form into which it has been changed, unless it has come into the possession of a bona fide purchaser without notice, and the Indiana Statute of Frauds does not change this rule. Burns' Ind. Stat., §§56-601, 56-606 and 56-608.

In one of the leading cases in Indiana, *Windstanley et al.* v. *Second National Bank of Louisville, Kentucky* (1895), 13 Ind. App. 544, at 546, 41 N. E. 956, this court stated:

"A court of law, as a general rule, deals only with the legal title, and when the legal identity of a chattel is destroyed, or cannot be specifically traced into another thing, such court is unable to give relief except by action for damages, against the wrongdoer or person, who converted it. But courts of equity, having greater powers, endeavor to afford a more complete remedy. *Thus any property, either real or personal, held by a fiduciary or trustee and denominated a trust, may be reached after it has changed its character and lost its original form.* (Our emphasis.)

"The equity rule is that trust property may be followed by the beneficiary so long as its identity can be ascertained. If a trustee or other fiduciary wrongfully dispose of his principal's property, equity imposes a constructive trust upon the new forms or species into which it is converted, so long as it can be traced or followed and its identity ascertained. 2 Pom. Eq. Juris., sections 1050, 1058; 2 Story Eq. Juris., sections 1258, 1259; *The principle upon which this rule rests is a very plain and*

*just one. It is founded upon the right of property. The trust property rightfully belongs to the cestuis que trust and a change in its form does not change its ownership. So long as either the original or substituted property can be traced or followed, equity will always attribute the ownership to the beneficiary and will not allow the right to be defeated by the wrongful act of the fiduciary, no matter what form it may assume.* (Our emphasis.)

"The true owner of property has the right to have his property restored to him, not as a debt due and owing, but because it is his property wrongfully withheld. As between the *cestuis que trust* and the trustee and all parties claiming under the trustee, except purchasers for value and without notice, all the property belonging to the trust, however much it may have been changed in its form or its nature or character, and all the fruits of such property, whether in its original or altered state, continue to be subject to and affected by the trust. *Pennell* v. *Deffell*, 4 De G. M. & G. (Eng. Ch.) \*372.";
*Pearce* v. *Dill* (1897), 149 Ind. 136, 48 N. E. 788; *Hanna* v. *McLaughlin* (1902), 158 Ind. 292, 63 N. E. 475; *Shopert* v. *Indiana Nat. Bank* (1908), 41 Ind. App. 474, 83 N. E. 505; *Continental Nat. Bank* v. *McClure* (1916), 60 Ind. App. 553, 111 N. E. 191; *Terre Haute Trust Co.* v. *Scott, Rec.* (1932), 94 Ind. App. 461, 181 N. E. 369; *Maryland Casualty Co.* v. *Rottger, Rec.* (1934), 99 Ind. App. 485, 194 N. E. 365; *Pugh* v. *Pugh* (1857), 9 Ind. 132, 134.

The evidence discloses that at the time of the death of the said Delos Thompson there was recorded in his name as an individual, a tract of land in Jasper County consisting of 314.75 acres, known as the Monnett farm. The record discloses the Monnett farm came into possession of the said Delos Thompson by virtue of a sheriff's deed dated May 2, 1898, and after he was named trustee by the heirs of Alfred Thompson; that by various conveyances of the Monnett farm and other lands between the said Delos Thompson and the other beneficiaries of the trust and the Lawler Brothers, the title to the Monnett farm again, on March 21, 1908,

rested in the said Delos Thompson and remained there until his death in 1950.

From exhibits introduced into the evidence, the record reflects that the net income from the Monnett farm, the Gifford farm and the Riley pasture was distributed equally between the said Ora T. Ross and Delos Thompson after the deaths of the other beneficiaries. Furthermore, the evidence shows in 1924 that Delos Thompson wrote his sister, Ora T. Ross, a letter, the pertinent part being:

"My dear Ora—

"Your good letter came this morning. I received $2,500.00 from the Equitable, being the dividends due but the balance has not come yet. I had to use nearly all this in paying a note I had to give the bank to pay taxes, etc. *The farms* are barely paying expenses and *our* taxes are over $4,000.00 per year. I have not used any of the *estate* money for our expenses for over a year and I feel that from the present outlook for crops we will not have enough money from the *farms*, etc., to pay any expenses. I would advise that you leave your share to help your expense a/c and to pay taxes. It looks as if it would be a very bad year for farmers." (Our emphasis.)

The letter affirmatively shows that in 1924 the farms were still a part of the trust and that Delos Thompson was still active as trustee; also that the appellant had an interest therein and this opened the door for the admission of parol evidence to explain the position of the parties.

Writings such as the foregoing letter are to be read in their setting, and the court may be aided by oral evidence as to the position, situation, circumstances, and surroundings of the party at the time of the execution of the deed and the writings, *Lehman* v. *Pierce* (1941), 109 Ind. App. 497, 36 N. E. 2d 952; Bogard on Trusts, §81 to §90, p. 282 to p. 321; *Ransdel* v. *Moore* (1899), 153 Ind. 393, 53 N. E.

767; *Nesbitt* v. *Stevens* (1903), 161 Ind. 519, 69 N. E. 256; *Kintner* v. *Jones et al.* (1889), 122 Ind. 148, 23 N. E. 701, and it is not necessary that the trust be reflected in the conveyance under which title to the property was taken by the trustee. *Lehman* v. *Pierce, supra; Nesbitt* v. *Stevens, supra; Kintner* v. *Jones, supra.*

Jim Russell and Lawrence Kellner, the Monnett farm tenants from 1919 to 1947, testified that upon several occasions during their tenancy the said Delos Thompson advised them that his sister, Ora T. Ross, the appellant herein, owned a half-interest in the Monnett farm. The record further discloses that the said Delos Thompson advised the three sons of Ora T. Ross in October, 1949, when they inquired about the finances of their mother that the *farm* (and the evidence clearly discloses at the time of the conversation the Monnett farm was the only farm remaining and it was recorded in the name of Delos Thompson) was doing well and there was no cause to worry. Can this court say that under such uncontradicted evidence as a matter of law that the appellant herein did not establish a reasonable inference that Ora T. Ross did not have an interest in the Monnett farm, stemming out of the estate of her deceased father? We think not, for it is the law, as stated by our Supreme Court, pertaining to trusts, ". . . There is no better evidence against a man than his own declarations continuously reiterated throughout manhood and age for more than thirty years." *Radcliff et al.* v. *Radford* (1882), 96 Ind. 482, 491.

The uncontradicted evidence as shown by various exhibits reflects that Delos Thompson in his ledgers and financial statements given to the appellant as a beneficiary of said trust carried the bank stock of the State Bank of Rensselaer as an asset of the trust. The exhibits further show that the value of

these stocks increased greatly, and, although it is apparent that said bank stock was in his name as an individual, an inference would reasonably follow that said bank stock was an asset of the trust belonging to the beneficiaries and heirs of Alfred Thompson; otherwise, his reports to said beneficiaries carrying said bank stock as an asset would be illogical and without appropriate explanation. The undisputed evidence shows that all of the proceeds from all of the property, both real and personal, and all other proceeds and income were deposited in the name of Delos Thompson; that the appellant herein, Ora T. Ross, for years drew upon his said account by signing his name as maker on the checks she wrote, and that this continued until she was advised by the personal representative of the said Delos Thompson, after his death, that she could no longer do this.

The evidence further reflects that the said Delos Thompson informed the sons of the appellant herein on October 30, 1949, that the appellant had plenty of money in the bank and he thought the amount was approximately between Fifteen Thousand ($15,000.00) Dollars and Twenty Thousand ($20,000.00) Dollars.

We feel that such uncontradicted evidence affords only the inference that the appellant herein had an interest in certain bank stock together with a banking account in the name of Delos Thompson.

In the case of *Pearce et al.* v. *Dill, supra,* the Supreme Court of Indiana, at page 142, said:

"All that the law contemplates by requiring the property or fund to be identified is a substantial identification, and, in case the fund consists of money, the *cestui que* trust may reclaim it, although not able to trace identical coins or bills, so long as its identity as a fund can be ascertained. It is a well-settled principle that the abuse of a trust fund by a trustee or fiduciary confers no right upon him, nor upon those who claim in priv-

ity with him. *Where the fund has been . . . or mixed with the funds of the trustee, or those claiming through him, and can be traced and identified, courts will attribute the ownership to the cestui que trust, and will not permit the . . . fiduciary in mixing the trust fund with his own funds, or those of a third party, to defeat a recovery, but, in general, in such cases, will separate the trust fund from the others with which it has been commingled, and restore it to the beneficiary entitled to receive it.* Bevis v. Heflin, 63 Ind. 129; Bundy v. Town of Monticello, 84 Ind. 119; Riehl v. Association, 104 Ind. 70, 3 N. E. 633; Orb v. Coapstick, 136 Ind. 313, 36 N. E. 278. Shepard v. Bank (Ind. Sup.; No. 17,783), 48 N. E. 346. See also the many leading authorities collected in a note to the case of Bank v. Goetz (Ill. Sup.), 32 Am. St. Rep. 119, on page 125 (s. c. 27 N. E. 907)." (Italics supplied.)

To the same effect, see *Shopert* v. *Indiana Nat. Bank, supra,* at page 517; *Terre Haute Trust Co.* v. *Scott, Rec., supra; Maryland Casualty Co.* v. *Rottger, Rec., supra; Windstanley et al.* v. *Second National Bank of Louisville, Kentucky, supra,* at page 547.

We believe upon the record before us that there was evidence in support of the material allegations of appellant's complaint, and, therefore, it was error for the court to sustain appellees' motions for a finding in their favor and that the finding against the appellant on her complaint at the conclusion of the plaintiff's evidence was contrary to law. The ends of justice would be served by granting a new trial.

The judgment is reversed with instructions to sustain the appellant's motion for a new trial.

Crumpacker, J., not participating.

Note.—Reported in 146 N. E. 2d 259.